IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| RYAN DATA EXCHANGE, LTD; and RYDEX TECHNOLOGIES LLC d/b/a RYDEX,<br><br>    Plaintiffs,<br><br>vs.<br><br>GRACO INC.,<br><br>    Defendant. | No. 4:14-cv-00198 – JEG<br><br>O R D E R |
| GRACO INC.,<br><br>    Counterclaimant and Third-Party Plaintiff,<br><br>vs.<br><br>RYAN DATA EXCHANGE, LTD, and RYDEX TECHNOLOGIES LLC d/b/a RYDEX,<br><br>    Counterclaim Defendants,<br><br>and<br><br>MICHAEL C. RYAN, and RYDEX LTD.,<br><br>    Third-Party Defendants | |

This matter comes before the Court on Motion for Summary Judgment to Dismiss Count II Related to Patent Infringement, ECF No. 19, by Graco Inc. (Graco). Ryan Data Exchange, Ltd., and Rydex Technologies LLC d/b/a Rydex (collectively, Plaintiffs) resist. Neither party requested a hearing on the Motion, and the Court finds a hearing is unnecessary. The Motion is fully submitted and ready for disposition.

**I.   BACKGROUND**

In June 1999, the U.S. Patent and Trademark (PTO) office issued Patent No. 5,913,180, entitled "Fluid Delivery Control Nozzle," (the '180 patent) to Michael C. Ryan. In January 2005, Rydex Ltd. and Mr. Ryan filed a complaint in the Southern District of Iowa alleging that

Graco Inc.'s fluid management system known as "Matrix" infringed the '180 patent.  See Ryan v. Graco Inc., 4:05-cv-00001-RP-TJS (S.D. Iowa 2005) [hereinafter Ryan I].  Graco denied liability and asserted that the '180 patent was invalid.

In September 2005, Michael C. Ryan and Rydex Ltd. and Graco entered into a settlement and license agreement (the Agreement).  The Agreement explained that Graco denied liability in Ryan I and had filed an answer alleging noninfringement and invalidity of the '180 patent.  The Agreement continued, "Licensors [(Ryan and Rydex)] and Licensee [(Graco)] desire to settle the Litigation and resolve the controversy between them relating to the '180 Patent without the expense, inconvenience, delay, and uncertainty of further litigation by entering into this Agreement."  Graco's Sealed App. A-18, ECF No. 20.  The Agreement provides that, subject to exceptions, "Licensors grant to Licensee an exclusive field of use license to make, have made, use and sell articles covered by the Licensed Patent for the field of lubricants and related fluid dispensing . . ."  Graco's Sealed App. A-19 ¶ 3.0, ECF No. 20.  In exchange, Graco would make a lump sum payment to Ryan and Rydex and make additional royalty payments calculated as a proportion of the Net Selling Price of Graco's Matrix meters and transceivers sold after January 1, 2005.[1]

The Agreement further provides that the parties would enter a joint dismissal with prejudice of the then-pending litigation.  The Agreement contains an article titled "Litigation Dismissal and Release," which in section 9.1 states, "Licensors and Licensee acknowledge that this Agreement is also a settlement of the Litigation and that when the Litigation is dismissed,

---

[1] The Court recognizes materials related to this discussion were filed under seal.  However, some isolated reference to the documents in this Order is necessary to fully set forth the Court's analysis of the issues, while not disclosing the documents in total.

the sole and exclusive further remedy between Licensors and Licensee shall be a remedy for breach of this License Agreement." Id. ¶ 9.1. In addition, section 9.2 provides in relevant part,

> Licensors hereby release and forever discharge Licensees . . . from all manner of actions and causes of action, debts, liabilities, controversies, claims, and demands of every kind and nature, known or unknown, relating to the facts or circumstances involved in the Litigation or relating to the '180 Patent or relating to the Matrix system, up to and including the Effective Date of this Agreement.

Section 11 is also relevant to the present dispute. It states,

> Should there be patent infringement relating to the licensed field of use by a third party and Licensee notifies Licensors of such infringement, Licensors shall have the initial choice and obligation to prosecute the infringement. If Licensors do not prosecute the infringement within ninety (90) days of learning of the infringement, then Licensee is free to prosecute the infringement. If Licensee prosecutes the patent infringement as per [section 11.1] below, the benefit of the damages or settlement achieved from the infringement shall be divided equally between Licensors on one hand and Licensee on the other after enforcement expenses incurred by Licensee have been paid.

Section 11.1 states as follows:

> If Licensors elect to initially pursue infringement upon notice by Licensee and bear the sole expense and cost of the infringement action, including attorneys fees, Licensors shall retain the exclusive benefit of any settlement or damages awarded against an infringer.

The Agreement provides it is governed by the law of the State of Iowa. In addition, the Agreement provides that unless it is earlier terminated it shall last for the life the '180 patent. Finally, the Agreement provides Licensors can terminate the Agreement if Licensees default on the royalty payments and the default remains unremedied after thirty days written notice.

Before August 2011, Plaintiffs and Graco agreed that Badger Meter, Inc., Balcrank Corporation, and Lincoln Industrial Corporation (collectively, third-party infringers) were infringing the '180 patent. Plaintiffs initiated a lawsuit alleging patent infringement against the third-party infringers on or about August 3, 2011. Graco alleges that Plaintiffs did not recover damages

3

from the third-party infringers and have allowed them to make, use, offer to sell, and/or sell products in violation of the Agreement.

On April 25, 2014, Graco's lawyer sent Plaintiffs a letter asserting that Plaintiffs failed to honor their agreement to provide Graco an exclusive license and to prosecute infringement of the '180 patent. The letter asserted that pursuant to the terms of the Agreement and because of "Rydex's multiple breaches of the Agreement, Graco is relieved from making any further royalty payments to Rydex." Pls. App. 010, ECF No. 22-4, 4.

Shortly after receiving Graco's letter, Plaintiffs filed their Complaint and Jury Demand. The Complaint is in two counts. Count I alleges breach of contract; Count II alleges infringement of the '180 patent.[2] Plaintiffs allege that Graco has continued to sell products covered by the '180 patent. Graco answered and filed counterclaims alleging, inter alia, that Plaintiffs breached the agreement by failing to provide Graco an exclusive license and by failing to prosecute infringement of the '180 patent after initiating a lawsuit against a third-party infringer. In addition, Graco seeks a declaratory judgment that, because of their alleged breaches of the Agreement, Plaintiffs no longer have any right to royalty payments from Graco.[3]

## II. DISCUSSION

Graco's Motion for Summary Judgment requests the Court to dismiss Plaintiffs' patent infringement claim. Graco's primary argument is that the unambiguous language of what it calls the "exclusive remedy clause" in the Agreement bars Count II of Plaintiffs' Complaint. Citing

---

[2] The Court has jurisdiction over Plaintiffs' patent infringement claim under 28 U.S.C. §§ 1331 and 1338(a).

[3] Graco also asserted claims against Michael C. Ryan and Rydex Ltd. as third-party defendants. Plaintiffs assert that Rydex Ltd. is a fictitious name for Ryan Data Exchange, Ltd.

section 9.1 of the Agreement, Graco asserts that the "sole and exclusive" means to resolve disputes relating to the '180 patent is a suit for breach of the Agreement.

Graco next argues that case law, including Realex Chemical Corp. v. S.C. Johnson & Son, Inc., 849 F.2d 299 (8th Cir. 1988), and PMX Industries, Inc. v. LEP Profit International, 31 F.3d 701 (8th Cir. 1994), demonstrate that the Agreement's release provisions bar Plaintiffs' claim. In addition, Graco argues in a footnote that Plaintiffs' "patent infringement claim is arguably barred by the doctrine of res judicata." Graco's Br. 6 n.3, ECF No. 19-1. For this proposition, Graco principally relies on Pactiv Corp. v. Dow Chemical Co., 449 F.3d 1227 (Fed. Cir. 2006). Finally, Graco argues that Federal Rule of Civil Procedure 1, which provides that the Federal Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding," counsels the Court to grant Graco's Motion. Graco observes that allowing Plaintiffs' patent claims to proceed will greatly increase the cost, expense, and duration of this litigation.

Plaintiffs' resistance to Graco's Motion makes two primary arguments. First, Plaintiffs argue that the letter from Graco's attorney quoted above, as well as Graco's subsequent failure to make royalty payments, repudiated the Agreement, and that repudiation relieved Plaintiffs from performing their contractual obligations and gave them a cause of action for total breach. Second, Plaintiffs argue that, even putting aside the repudiation argument, the language of the Agreement does not support Graco's Motion. Plaintiffs argue that section 9.1 of the Agreement does not bar future patent infringement claims between the parties. Plaintiffs assert section 9.2 clarifies this because its release provision only reaches claims existing "up to and including the Effective Date of this Agreement." Pls.' Br. 13, ECF No. 22-1 (quoting Pls' Sealed App. 005, ECF No. 25-1). Plaintiffs further contend that the release is inapplicable because their patent claim only relates to infringement that allegedly occurred after Graco allegedly breached the

Agreement. Finally, Plaintiffs argue that section 15 of the Agreement, which provides "[t]he rights and remedies of the parties under this Agreement are in addition to all other rights and remedies at law or in equity, that they may have against the other," indicates that the Agreement does not bar their claim. Pls.' Br. 13, ECF No. 22-1 (quoting Pls' Sealed App. 15, ECF No. 25-1).

The Court shall grant summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Hemminghaus v. Missouri, 756 F.3d 1100, 1105-06 (8th Cir. 2014). Here, the relevant facts are undisputed, and parties dispute whether Graco is entitled to judgment as a matter of law.

The Agreement is governed by Iowa law. Graco's Sealed App. A-23, ECF No. 20. "In interpreting state law, [federal courts] are bound by the decisions of the state's highest court." Allstate Indem. Co. v. Rice, 755 F.3d 621, 623 (8th Cir. 2014) (citation omitted). Iowa courts "utilize contract principles when interpreting settlement agreements." Phipps v. Winneshiek Cnty, 593 N.W.2d 143, 146 (Iowa 1999); PMX Indus., Inc., 31 F.3d at 703.

In Iowa, "[i]nterpretation of a contract is a legal issue unless the interpretation of the contract depends on extrinsic evidence." Alta Vista Props., LLC v. Mauer Vision Ctr., PC, 855 N.W.2d 722, 726 (Iowa 2014) (quoting Pillsbury Co. v. Wells Dairy, Inc., 752 N.W.2d 430, 435 (Iowa 2008)). "If the contract is ambiguous and uncertain, extrinsic evidence can be considered to help determine the intent. Yet, a contract is not ambiguous merely because the parties disagree over its meaning." Hartig Drug Co. v. Hartig, 602 N.W.2d 794, 797 (Iowa 1999). "When the interpretation of a contract depends on the credibility of extrinsic evidence or on a choice among reasonable inferences that can be drawn from the extrinsic evidence, the question of interpretation is determined by the finder of fact." Pillsbury Co., 752 N.W.2d at 456.

6

"In interpreting contracts, [Iowa courts] give effect to the language of the entire contract according to its commonly accepted and ordinary meaning." Hartig Drug Co., 602 N.W.2d at 797-98. Iowa courts prefer "[a]n interpretation which gives a reasonable, lawful, and effective meaning to all terms" in the contract, rather the one which "leaves a part unreasonable, unlawful, or of no effect." Alta Vista Props., LLC, 855 N.W.2d at 727 (quoting Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp., 266 N.W.2d 22, 26 (Iowa 1978)).

Here, Graco argues that what it terms the Agreement's "exclusive remedy clause" (section 9.1) and the release provision (section 9.2) each bar Plaintiffs' patent claim. As noted, the first case Graco cites in support of its release provision argument is Realex Chemical Corp. In that case, the settlement agreement, which resolved a copyright dispute between the parties, called for Realex to make specific changes to its label for its "Ant & Roach Killer," and Johnson agreed it would not object to the use of that label. Realex Chemical Corp., 849 F.2d at 300. The agreement also provided that Realex would adopt certain changes to its "Wasp & Hornet Killer" label and that "Johnson takes no position as to the propriety of the changes." Id. at 301.

Realex made the specified changes to its Wasp & Hornet Killer label. Id. Johnson then asserted new copyright infringement and unfair competition claims against Realex. Id. The court reasoned that notwithstanding the phrase "Johnson takes no position as to the propriety of the changes," the settlement agreement evidenced the parties' agreement that Realex could use a Wasp & Hornet label that conformed to the changes described in the agreement. Id. Contrary to Graco's assertion, Realex does not articulate any broad propositions regarding the effect of release provisions. Rather, the case simply held that if a party conducts itself as contemplated in a settlement agreement, the other party to the agreement cannot complain. Here, unlike in Realex, Plaintiffs allege that Graco has not performed its obligations under the Agreement and it *subsequently* infringed the '180 patent.

7

Next, Graco asserts that the present case is analogous to <u>PMX Industries Inc. v. LEP Profit International</u>. In that case, the parties agreed to submit two sets of the disputes involving shipping charges to arbitration. <u>PMX Indus. Inc.</u>, 31 F.3d at 702. After signing the agreement to arbitrate those disputes, but before the arbitration hearing, PMX learned of additional claims against LEP. <u>Id.</u> LEP declined to arbitrate the additional claims. <u>Id.</u> The arbitrator determined LEP owed PMX damages. <u>Id.</u> LEP offered to pay PMX on the condition that PMX release LEP from any claims PMX had against it. <u>Id.</u> PMX accepted this offer, and the parties executed a broad release. <u>Id.</u> at 703. PMX then filed a new action regarding the claims that LEP had declined to arbitrate. <u>Id.</u> The court found, whatever PMX's subjective intent, the parties' agreement unambiguously released LEP from "all claims . . . whatsoever from the beginning of the world to the day of the date [of the parties' agreement]." <u>Id.</u> at 703-704 (first alternation in original). Accordingly, the court upheld the district court's entry for summary judgment for LEP.

Similar to the release in <u>PMX</u>, section 9.2 of the Agreement "releases and forever discharge[s]" Graco from

> all manner of actions and causes of action, debts, liabilities, controversies, claims, and demands of every kind and nature, known or unknown, relating to the facts or circumstances involved in the Litigation or relating to the '180 Patent or relating to the Matrix system, up to and including the Effective Date of this Agreement.

Graco's Sealed App. A-22, ECF No. 20. While the plaintiff's claims at issue in <u>PMX</u> clearly fell within the language of the release, <u>PMX</u> does not support Graco's argument here. As explained more thoroughly below, Count II of the Complaint does not allege claims that arose "up to and including the Effective Date of this Agreement." The Complaint alleges Graco infringed the '180 patent *after* executing and breaching the Agreement. Giving effect to section 9.2 and applying its ordinary meaning requires the Court to conclude that the section does not release Graco from claims alleging acts of infringement subsequent to the execution of the Agreement.

8

Graco's argument regarding section 9.1 presents a closer question. Section 9.1 provides that "Licensors and Licensee acknowledge that this Agreement is also a settlement of the Litigation and that when the Litigation is dismissed, the sole and exclusive further remedy between Licensors and Licensee shall be a remedy for breach of this License Agreement." Graco's Sealed App. A-22, ECF No. 20. The Agreement specifically defines Litigation as "a civil action against Licensee seeking damages and other relief for alleged infringement of [the '180 patent] captioned Michael C. Ryan, et. al. v. Graco Inc., CIVIL NO. 4:0[5]-CV-00001 RP-TJS." Id. at A-18.

At least grammatically, section 9.2 is potentially susceptible to multiple interpretations.[4] The phrase "sole and exclusive further remedy between Licensors and Licensee shall be a remedy for breach of this License Agreement" might, as Graco seems to suggest, refer to all disputes between the parties, or at least all disputes related to the '180 patent. Alternatively, the clause might only refer to the "Litigation" mentioned earlier in the sentence.

Interpreting the Agreement as a whole, the latter interpretation is the most sound. As noted, Litigation is a defined term that does not include all potential litigation between the parties or even all potential litigation involving the '180 patent. In the context of section 9.2, the limited definition of Litigation reenforces the logical reading of the clause, which is that it does not limit the parties' remedies for conduct that was not at issue at the time they signed the Agreement. Moreover, as noted above, the Agreement contemplates it could terminate before the life of the '180 patent. The Court must conclude it would be an unreasonable interpretation that Plaintiffs would agree to limit their ability to sue Graco for patent infringement if, as they allege, Graco terminated the Agreement.

---

[4] Although the parties disagree about the Agreement's meaning, no party has argued there is significant extrinsic evidence relevant to its interpretation. Accordingly, interpretation of the Agreement is a legal issue for the Court. Alta Vista Props., LLC, 855 N.W.2d at 726.

Finally, the Agreement states "Licensee agrees that, other than the Reexamination [of the '180 patent by the PTO as contemplated by the Agreement], it will not challenge the validity of the '180 Patent again." Id. at A-20.  Notably, there is not a mirror image clause providing that Plaintiffs will not accuse Graco of infringement again.  When appropriate, Iowa courts apply the rule of contract interpretation that "*expressio unius est exclusio alterius* – [T]he expression of one thing of a class implies the exclusion of others not expressed." Alta Vista Props., LLC, 855 N.W.2d at 726 (citation omitted).  Of course, this principle is "only one principle of interpretation, not necessarily a legal trump card." Id.  However, taken in the context of the entire Agreement, the clause barring Graco from challenging the patent's validity and the lack of a reciprocal clause limiting Plaintiffs' rights to sue for infringement further indicates that section 9.2 does not have the effect Graco contends.  Therefore, the Court must find Graco is not entitled to summary judgment and dismissal of Count II on the ground that the Agreement expressly bars the claim.

Although Graco only mentions its res judicata argument in passing, placing the concept in a footnote to the settlement and release argument, a large body of case law has considered res judicata issues in patent cases, and the issue warrants discussion here.  Under modern usage, the term res judicata "incorporates the related concepts of issue preclusion and claim preclusion." Magee v. Hamline Univ., No. 14-1699, 2015 WL 72583, at *2 (8th Cir. Jan. 7, 2015) (citing Sandy Lake Band of Miss. Chippewa v. United States, 714 F.3d 1098, 1102 (8th Cir. 2013)).  Claim preclusion is the only potentially applicable doctrine in this case.[5]  "Under claim preclusion, 'a final judgment on the merits of an action precludes the parties . . . from relitigating

---

[5] Although a settlement agreement and stipulated dismissal with prejudice may have claim preclusive effect, Larken, Inc. v. Wray, 189 F.3d 729, 732 (8th Cir. 1999), issue preclusion requires that "the issue sought to be precluded must have been actually litigated in the prior action." B & B Hardware, Inc. v. Hargis Indus., Inc., 716 F.3d 1020, 1024 (8th Cir. 2013). Accordingly, a stipulation to dismiss a claim before trial, especially without any acknowledgment of liability, cannot have issue preclusive effect. Brain Life, LLC v. Elekta Inc., 746 F.3d 1045, 1055 (Fed. Cir. 2014).

issues that were or could have been raised in that action.'" Magee, No. 14-1699, 2015 WL 72583, at *2 (quoting Knutson v. City of Fargo, 600 F.3d 992, 996 (8th Cir. 2010)). "Claim preclusion applies 'whether the judgment of the court is rendered after trial and imposed by the court or the judgment is entered upon the consent of the parties." Brain Life, LLC v. Elekta Inc., 746 F.3d 1045, 1053 (Fed. Cir. 2014) (quoting Nystrom v. Trex Co., 580 F.3d 1281, 1285 (Fed. Cir. 2009)); Larken, Inc. v. Wray, 189 F.3d 729, 732 (8th Cir. 1999).

In a patent case, this Court, like the Federal Circuit would on an appeal from this district, generally applies the law of the Eighth Circuit "in determining whether claim preclusion bars a later lawsuit." Brain Life, LLC, 746 F.3d at 1052; SV Int'l, Inc. v. Fu Jian Quanyu Indus. Co., 820 F. Supp. 2d 677, 679 (M.D.N.C. 2011). However, "[w]hether two claims of infringement constitute the same claim or cause of action is an issue particular to patent law," and Federal Circuit law is controlling. Brain Life, LLC, 746 F.3d at 1052.[6]

"To establish that a claim is barred by claim preclusion, a party must show that '(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action.'" Magee, No. 14-1699, 2015 WL 72583, at *2 (quoting Yankton Sioux Tribe v. U.S. Dep't of Health & Human Servs., 533 F.3d 634, 639 (8th Cir. 2008)). In determining whether a cause of action is the same, the Federal Circuit and the Eighth Circuit follow "the approach in the Restatement (Second) of Judgments, which states that a cause of action is defined by the transactional facts from which it arises, and the extent of the factual overlap." Senju Pharm. Co. v. Apotex Inc., 746 F.3d 1344, 1349 (Fed. Cir. 2014);

---

[6] Often, the issue of controlling law in this context is largely academic. The Federal Circuit has stated that there is "no significant difference" between its law regarding claim preclusion and the law of a regional circuit that has adopted the Restatement (Second) of Judgments' approach for determining whether two causes of action are the same for claim preclusion purposes. Acumed LLC v. Stryker Corp., 525 F.3d 1319, 1325 n.3 (Fed. Cir. 2008). The Eighth Circuit has adopted this approach. Lane v. Peterson, 899 F.2d 737, 742 (8th Cir. 1990).

11

Banks v. Int'l Union Elec., Elec., Technical, Salaried & Mach. Workers, 390 F.3d 1049, 1052 (8th Cir. 2004). In addition, the Federal Circuit has explained, "[o]ne of the areas of factual overlap that we consider in a patent case involving claim preclusion is the overlap of the product or process accused in the instant action with the product or process accused in the prior action. If the products or processes are essentially the same, then claim preclusion may apply." Senju Pharm. Co., 746 F.3d at 1349.

As noted, Graco principally relies on Pactiv Corp. v. Dow Chemical. That case explained that Dow Chemical sued Pactiv in 1995 for patent infringement, and Pactiv asserted invalidity and unenforceability counterclaims. Pactiv Corp., 449 F.3d at 1229. The parties entered a settlement and license agreement in 1998 and agreed to dismiss the 1995 action with prejudice. Id. Pursuant to the 1998 agreement, Pactiv agreed to pay royalties to Dow. Id. However, Pactiv stopped making payments in 2002. Id. Dow notified Pactiv it was in breach of the license agreement, and it would lose the right to practice Dow's patents. Id. at 1230.

Pactiv responded that it believed Dow's patents were invalid, and Pactiv filed a declaratory judgment action alleging noninfringement, invalidity, and unenforceability of the relevant patent. Id. Pactiv did "not dispute that under general claim preclusion principles, it [was] barred from asserting the claims at issue. Instead, Pactiv ague[d] that an exception to claim preclusion applies because Pactiv reserved the right to challenge the [relevant] patents in the 1998 Agreement." Id. at 1230-31. The Federal Circuit disagreed and found that the 1998 agreement failed to "expressly reserve [Pactiv's] right to maintain future invalidity and enforceability challenges." Id. at 1232. Accordingly, the court held claim preclusion barred Pactiv's declaratory judgment action. Id.

Even though Plaintiffs did not expressly reserve the right to litigate alleged acts of infringement by Graco after the signing of the Agreement, the different procedural posture of the present case, as well as subsequent Federal Circuit case law, make clear that Pactiv does not bar

claims of *infringement* that post-date a settlement agreement and dismissal with prejudice. Pactiv involved a request for a declaratory judgment of invalidity and noninfringement. Pactiv Corp., 449 F.3d at 1229. The posture of the present case is more like Aspex Eyewear, Inc. v. Marchon Eyewear, Inc., 672 F.3d 1335, 1337 (Fed. Cir. 2012). Aspex involved a decade-long series of patent litigation. Id. at 1338. Most relevant here is that Aspex sued Marchon for patent infringement in 2006, and in 2008 the parties entered a settlement agreement and a stipulation to dismiss that case with prejudice. Id. at 1339. In 2009, after the PTO reexamined the relevant patent, Aspex filed a new patent infringement action against Marchon. Id. Marchon asserted that because "the accused products at issue in this case are 'essentially the same' as the allegedly infringing products that were at issue in the earlier litigation," the settlement of the earlier litigation precludes the second action. Id. at 1340. Marchon "made clear that [it] regarded that argument as applicable even with respect to particular goods that were made and sold after the initiation and conclusion of the [2006 action]." Id. at 1342. The Federal Circuit rejected that argument, explaining

> [R]es judicata does not bar Aspex's lawsuit with respect to accused products not in existence at the time of the [2006 action] for the simple reason that res judicata requires that in order for a particular claim to be barred, it is necessary that the claim either was asserted, or could have been asserted, in the prior action. If the claim did not exist at the time of the earlier action, it could not have been asserted in that action and is not barred by res judicata. . . .
>
> Although the parties debate whether the design of those products is essentially the same as the design of the products that were the subjects of the [2006 action], that does not matter with respect to products that were made or sold after the time of the previous lawsuits.
>
> Under well-settled principles, a party who sues a tortfeasor is ordinarily not barred by a prior judgment from seeking relief for discrete tortious action by the same tortfeasor that occurs subsequent to the original action. That rule is based on the principle that res judicata requires a party to assert all claims that the party could have asserted in the earlier lawsuit; it follows that if the party could not have asserted particular claims – because the tortious conduct in question had not occurred at that time – those claims could not have been asserted and therefore are not barred by res judicata. . . .

13

>That principle has been applied to patent cases, and in particular to cases involving sequential acts of infringement; in that setting, this court and others have characterized the "claim" that gives rise to preclusion as encompassing only the particular infringing acts or products that are accused in the first action or could have been made subject to that action.

Id. at 1342-43.

The Federal Circuit recently reaffirmed these principals in Brain Life, LLC v. Elekta Inc. That case discussed a prior patent infringement claim that was followed by a settlement and dismissal of the claim with prejudice. Brain Life, LLC, 746 F.3d at 1050. Later, a licensee of the patent sued the same defendant that was involved in the prior case. Id. at 1051. The court held "to the extent [the licensees's] allegations of infringement are directed to products created and, *most importantly, acts of alleged infringement occurring after entry of the final judgment* in the [prior action], those claims are not barred by the doctrine of claim preclusion." Id. at 1054 (emphasis added)[7]; see also Ripplin Shoals Land Co., LLC v. U.S. Army Corps of Engineers, 440 F.3d 1038, 1042 (8th Cir. 2006) ("[R]es judicata does not apply to claims that did not exist when the first suit was filed.");18 James Wm. Moore, Moore's Federal Practice § 131.23(3)(c) ("It is clear that wrongful conduct that occurs after the judgment is entered in a prior action is not within the scope of claim preclusion.").

---

[7] Nevertheless, the court found the licensee's claim was barred by the Kessler doctrine. See Brain Life, LLC, 746 F.3d at 1056 (citing Kessler v. Eldred, 206 U.S. 285 (1907)). The Kessler doctrine operates, even when claim preclusion does not apply, to allow "an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." Id. at 1056. In Kessler, Eldred sued Kessler for patent infringement, and Kessler obtained a judgment that its product did not infringe. Id. Later, Eldred sued a customer of Kessler's that was selling the same product at issue in the first action. Id. The Supreme Court upheld an injunction of the second suit, reasoning the judgment in the first action "settled finally and everywhere . . . that Kessler has the right to manufacture, use, and sell the [product] in question." Id. (quoting Kessler, 206 U.S. at 288). Graco has not argued the Kessler doctrine applies here. Unlike in Kessler, in this case, Graco is not an adjudged non-infringer.

Aspex Eyewear and Brain Life illustrate that claim preclusion does not bar Plaintiffs' patent infringement claim in this case because Plaintiffs' cause of action is not the same as the cause of action at issue in Ryan I.[8] As Plaintiffs' brief recognizes, Count II of the Complaint only reaches alleged acts of infringement that occurred after the execution of the Agreement. The alleged acts of infringement, even though they involve the same patent as was at issue in Ryan I, are, if proven and not subject to an affirmative defense, akin to a discrete tortious act by the same tortfeasor. Accordingly, the Plaintiffs' patent infringement claim is not precluded.[9]

### III. CONCLUSION

For the reasons stated, Graco's Motion for Summary Judgment on Count II of the Complaint, ECF No. 19, must be **denied.**

**IT IS SO ORDERED.**

Dated this 20th day of January, 2015.

JAMES E. GRITZNER, Chief Judge
U.S. DISTRICT COURT

---

[8] Because Aspex Eyewear and Brain Life show that Graco has not demonstrated the fourth element of claim preclusion, the Court need not address the other three elements. See Magee, No. 14-1699, 2015 WL 72583, at *2 (listing the elements of claim preclusion).

[9] The Court also finds that Graco's argument regarding Federal Rule of Civil Procedure 1 lacks merit. Rule 1 states the federal rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." This Rule does not alter the Rule 56 standard, which requires a party seeking summary judgment to prove it is entitled to judgment as a matter of law. For the reasons discussed above, Graco has not made that showing. In addition, the Court need not reach Plaintiffs' repudiation argument as it finds Plaintiffs' contract interpretation argument controlling.